UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

M.C. and S.C., parents of S.C., a minor,

Plaintiff(s),

v.

SEATTLE SCHOOL DISTRICT NO. 1,

Defendant(s).

NO. C04-1459P

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT re:
PREVAILING PARTY and
ATTORNEY'S FEES

The above-entitled Court, having received and reviewed:

1.   Seattle School District's Motion for Summary Judgment

2.   Plaintiffs' Response to Seattle School District's Motion for Summary Judgment and Cross Motion for Summary Judgment

3.   Seattle School District's Reply in Support of Motion for Summary Judgment, Response to Plaintiffs' Cross Motion and Request to Strike

4.   Plaintiffs' Reply to School District's RESPONSE to Plaintiffs' Cross Motion and Request to Strike

5.   Plaintiffs' Motion for Summary Judgment Awarding Attorney's Fees and Costs

6.   Seattle School District's Response to Plaintiffs' Second Motion for Summary Judgment

7.   Plaintiffs' Reply to Seattle School District's Response to Plaintiffs' Second Motion for Summary Judgment

and all exhibits and declarations attached thereto, makes the following ruling:

IT IS HEREBY ORDERED that the Seattle School District's Motion for Summary Judgment is DENIED.

**ORD ON MTNS
FOR SUMM JMT - 1**

1    IT IS FURTHER ORDERED that Plaintiffs' Cross-Motion for Summary Judgment is

2    GRANTED.

3    IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment Awarding

4    Attorney's Fees and Costs is GRANTED, and Defendant shall pay $29,468.50 to Plaintiffs within 30

5    calendar days of the entry of this order.

6    **Background**

7    The facts of this matter are not in dispute.  Plaintiffs are the parents of a child who qualifies for

8    special education consideration by virtue of her emotional and behavioral disabilities.  On May 27,

9    2003, Plaintiffs notified the Seattle School District ("SSD") by letter that they intended to enroll their

10   daughter (who had been attending Roosevelt High School in Seattle) at a private educational program

11   called the Educational Advance Academy ("EA2") for the summer of 2003 and for her junior year of

12   high school (2003-2004).  They requested reimbursement for the costs of EA2.

13   SSD denied the request for reimbursement and offered to convene a meeting of the girl's

14   Individual Education Program (IEP) team to address Plaintiffs' concerns about their daughter's refusal

15   to attend Roosevelt High School.  On September 4, 2003, the IEP team meeting was held and an

16   evaluation was ordered.  That evaluation was conducted approximately two and a half weeks later.

17   On October 23, 2003, the IEP team reconvened.  At that time, Plaintiffs rejected SSD's proposal of a

18   return to Roosevelt and a "behavior intervention plan" and requested a due process hearing.

19   On February 17, 2004, Plaintiffs filed for a due process hearing, requesting seven items of

20   relief:

21            1.    A ruling that SSD had violated the Individuals with Disabilities Education Act

22                  ("IDEA") by their failure to provide their daughter with "a free and appropriate

23                  education."

24

25

26   **ORD ON MTNS**
     **FOR SUMM JMT - 2**

2.      A ruling that the placement offered to the minor in the summer of 2003 and in
2003-2004 school year was not reasonably calculated to meet her needs.

3.      A ruling that an appropriate educational placement would be enrollment in EA2
and private tutoring.

4.      An order of placement at EA2 for 3 classes per trimester.

5.      An order that SSD reimburse Plaintiffs for all expenses associated with the
placement at EA2 and the tutoring.

6.      An order of reimbursement for an evaluation by Dr. Uherek.

7.      An award of all costs, including attorney's fees.

On April 14, 2004, SSD informed Plaintiffs by letter of their intent to reimburse them for the EA2 tuition and the costs of a tutor from March 2003 to June 2004.  There were no conditions placed on these actions and the letter explicitly stated that payment "is not intended to be part of a settlement agreement of any kind."

At the readiness hearing (also held on April 14), the administrative law judge ("ALJ") presiding over the due process hearing obtained stipulations from Defendants on the record that they had failed to offer an appropriate educational program and that EA2 was an appropriate educational program.  Plaintiffs requested an order compelling Defendant to comply with its own stipulations (it is unknown whether such an order was  forthcoming; neither party cites to one).

On April 30, 2004, the ALJ ruled on SSD's motion to dismiss, based on their argument that all issues were mooted by their unilateral agreement to comply with Plaintiffs' requests. The order dismissed Claims 1 - 5 as moot and dismissed Claim 7 because the ALJ had no jurisdiction to award fees and costs.  Jurisdiction was retained over Claim 6 (Dr. Uherek's fees).  Significantly, while the ALJ dismissed Plaintiffs' claims, the administrative matter itself was not dismissed at this time.

1    On May 10, 2004, at a prehearing conference, SSD indicated it would pay for the Uherek

2    evaluation,  The due process hearing was cancelled, but rescheduled for June 11, 2004 to confirm that

3    SSD had done what it had promised to do.  At that follow-up hearing, the administrative case was

4    dismissed with prejudice.  Shortly thereafter, a letter was sent by Plaintiffs requesting payment of

5    $29,468.50 in attorney fees and costs, which they felt they were owed as the "prevailing party" under

6    the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1415.   That request was

7    rejected by Defendant.

8    **Issues Presented**

9    The summary judgment motions present two issues:

10    1.    Do Plaintiffs fall within the IDEA definition of "prevailing party" and thereby qualify

11          for an award of attorney's fees?

12    2.    If so, are they entitled to attorney's fees and costs in the amount which they have

13          requested?

14    It is the finding of this Court that the answer to both of those questions is "yes."

15    **Discussion**

16    "Prevailing party" under the IDEA

17    The IDEA provides that "in any action or proceeding brought under this section, the court, in

18    its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a

19    disability who is the prevailing party."  20 U.S.C. § 1415(i)(3)(B).

20    The analysis of the parties' positions in this case begins with the Supreme Court holding in

21    Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532

22    U.S. 598 (2001), which (1) eliminated the "catalyst theory"[1] as a means for plaintiffs to recover

23

24          [1] Briefly stated, the "catalyst theory" treated as the "prevailing party" any party who by any
25    action (judicial or extra-judicial) had obtained the relief they sought.

26    **ORD ON MTNS**
      **FOR SUMM JMT - 4**

attorney fees where they had obtained their desired results without final court action and (2) declared that the criteria for determining "prevailing party" status for purposes of awarding attorney fees would be the existence of a judicially-sanctioned "material alteration of the legal relationship of the parties." Id. at 604.

As examples of the kind of "judicial imprimatur" to which they referred, the Buckhannon court mentioned "judgments on the merits... [and] settlement agreements enforced through a consent decree." Id. The facts of this case clearly fall outside those examples, and this Court must decide whether or how to apply this rule where a defendant has unilaterally agreed to create the remedy sought without either a court order or a settlement agreement, albeit not without some judicial involvement.

The first question to address in this regard is whether Buckhannon (which concerned provisions of the Fair Housing Amendments Act and the Americans with Disabilities Act) applies to the IDEA. Ninth Circuit case law is less than crystal clear on the issue. In Barrios v. California Interscholastic Federation, 277 F.3d 1128, 1134 (9th Cir. 2003), the Court held that a party who had obtained an out-of-court settlement agreement which was judicially enforceable was a "prevailing party" (and additionally held that Buckhannon's rule regarding the requirement of judicial supervision was non-binding "dictum"). However, one year later in Shapiro v. Paradise Valley Unified School District No. 69, 374 F.3d 857, 865 (2004), the Court found Buckhannon applicable to fee requests under the IDEA. "[I]n order to be considered a 'prevailing party' after Buckhannon, a plaintiff must not only achieve some 'material alteration of the legal relationship of the parties,' but that change must also be judicially sanctioned." Id., quoting Roberson v. Giuliani, 346 F.2d 75, 79 (2d. Circ. 2003).

Plaintiffs' position is that Buckhannon does not apply to their situation. First, they argue that Barrios stands for the Ninth Circuit rule that some extra-judicial agreements entitle the prevailing party to attorney's fees ("a plaintiff 'prevails' when he or she enters into a legally enforceable settlement

**ORD ON MTNS**
**FOR SUMM JMT - 5**

1   agreement," 277 F.3d at 1134); second, they argue that <u>Shapiro</u> does not represent an implicit reversal

2   of <u>Barrios</u> and any language to the contrary in that opinion is *dicta* (on the theory that <u>Shapiro</u>

3   involved a final judgment after a hearing).

4          Although it seems clear that <u>Shapiro</u> does in fact overturn <u>Barrios</u>, this opinion does not reach

5   the issue for the simple reason that this case does not have an <u>agreement</u> altering the legal relationship

6   between the parties, which was at the heart of the <u>Barrios</u> decision.  SSD unilaterally altered its

7   position (and went to great pains to avoid labeling their actions as a settlement agreement), and on

8   that basis <u>Barrios</u> is simply inapplicable.

9          Nor does this Court find the plain holding of <u>Shapiro</u> ("We therefore conclude that

10  <u>Buckhannon</u>'s definition of 'prevailing party' applies to the IDEA's attorney's fees provision."  374

11  F.3d at 865) to be *dicta*.  Nevertheless, Plaintiffs qualify for "prevailing party" status under the

12  <u>Buckhannon/Shapiro</u> line of holdings based on a finding that there is a sufficient "judicial imprimatur"

13  in the outcome of the underlying matter to warrant an award of attorney's fees to Plaintiffs.

14         What <u>Buckhannon</u> requires is a judicially-sanctioned "material alteration of legal relationship of

15  the parties" and that is exactly what the facts before this Court present.  First, the "judicial sanction" is

16  present in the form of the involvement of a judicial body (the administrative court) and the use of

17  judicial power represented by the ALJ having:

18                    1.    Elicited stipulations from Defendant that its prior practices had violated the

19                          statute;

20                    2.    Elicited a stipulation from Defendant to amend the student's IEP;

21                    3.    Recited the stipulations on which the dismissal was based into the record; and

22                    4.    Retained jurisdiction until Defendant had done what it said it would do.

23

24

25

26  **ORD ON MTNS**
    **FOR SUMM JMT - 6**

1    Second, there is the required "material alteration of the legal relationship of the parties"

2    represented by SSD's stipulations that its previous position was in error (essentially, Defendant's

3    admission of a violation of the IDEA) and that Plaintiffs' position (i.e., the appropriate placement for

4    their daughter was in EA2) was correct.  Defendant argues that there is no "judicial imprimatur"

5    because they did not place themselves in a position where the ALJ could <u>force</u> them to do anything

6    they did not want to do, but that argument misses the point.  Had they not done what they said they

7    would do, SSD would have had to go through with a due process hearing at which their legal position

8    was fixed (to their disadvantage) by their stipulations; i.e., their admissions on the record substantially

9    altered their legal relationship with Plaintiffs.  These two factors combine to create the "imprimatur"

10    required to give Plaintiffs "prevailing party" status and award them attorney's fees.

11    This represents an extension of  existing law into the area of unilateral actions by parties

12    accused on violating the IDEA, but a logical and defensible extension from the dual standpoints of

13    jurisprudence and public policy.  The school district's strategy of last-minute capitulation was clearly

14    designed to avoid being assessed attorney fees and costs despite their own admission that what they

15    had done was inappropriate.  It is disingenuous to call their remedial actions in this matter "voluntary:"

16    Plaintiffs (at great expense to themselves) pursued the rights of their child through a complex

17    administrative process necessitated by SSD's refusal to acknowledge their wrongdoing, and only on

18    the eve of a hearing before a judicial officer did they concede the parents' position.  The school district

19    should not be rewarded for their gamesmanship by being permitted to saddle Plaintiffs with the bill for

20    Defendant's intransigence.

21    The public policy rationale can be found in the IDEA's essential purpose: "to ensure that all

22    children with disabilities have available to them a <u>free</u> appropriate public education... to meet their

23    unique needs."  20 U.S.C. §1400(d)(1)(A) (emphasis supplied).  Although this Court acknowledges

24    that the state of the law is such that it is not enough that the actions of parents to enforce their child's

25

26    **ORD ON MTNS**
     **FOR SUMM JMT - 7**

1   rights under the IDEA catalyzed a recalcitrant school district into action, the facts of this case warrant

2   a finding that the alteration of the school district's position was in fact judicially-sanctioned.  That a

3   judicial officer saw fit to force the Defendant to legally alter its position on the record and then to

4   maintain jurisdiction over the matter until she was satisfied that the school district had fulfilled its

5   promises provides the requisite "judicial imprimatur" to uphold that finding.

6        Inherent in this ruling is a finding that Plaintiffs' position that Buckhannon does not actually

7   apply to the IDEA is not well-taken.  In addition to the findings to the contrary of every circuit that

8   has addressed the question, there is the clear language of Buckhannon itself that the holding is not

9   restricted to the boundaries of its facts but applies to the "numerous federal statutes [which] allow

10  courts to award attorney's fees and costs to the 'prevailing party.'" 532 U.S. at 600.

11       Furthermore, this opinion does not reach Defendant's motion to strike certain comments by

12  defense counsel quoted by Plaintiffs in their pleadings.  The quoted comments (to the effect that the

13  actions of Plaintiffs' counsel acted as a "catalyst" to the school district's conduct) are relevant only to

14  a "catalyst theory" of recovery which has previously been ruled no longer applicable in these cases.

15  The request to strike the quoted material is therefore moot.

16  Attorney's Fees and Costs

17       Plaintiffs seek attorney's fees in the amount of $29,468.50, calculated under the "lodestar"

18  system promulgated in Caudle v. Bristow Optical Co., 224 f.3d 1014, 1020 (9th Cir. 2000).  In

19  adopting Plaintiffs' calculations, the Court has considered the following factors:

20       **1.**   **Time and labor required:** Plaintiffs' counsel prepared for and put on a six-day due

21            process hearing.  The consultation time involved in the complex due process procedure

22            created by IDEA is typically significant, and Plaintiffs have presented expert opinion

23            evidence which verifies that the amount of time expended was appropriate.

24

25

26  **ORD ON MTNS**
    **FOR SUMM JMT - 8**

**2.    Novelty and difficulty of questions:** Plaintiffs have presented expert opinion evidence which addresses both the complexity of special education practice in general and of this case in particular.

**3.    Preclusion of other employment:** Counsel for Plaintiffs submitted an uncontroverted declaration indicating that she had to decline some new clients because of the demands of this case.

**4.    Customary fee:** Plaintiffs' attorney's fee is $185/hour; the prevailing rate for special education attorneys is $175-200/hour.

**5.    Fixed or contingent fee:** Midway through her representation, Plaintiffs' attorney reduced her hourly rate by $35/hour to avoid undue economic hardship on parents (with the parents still responsible for the difference if their attonrney was awarded the reduced rate). Plaintiffs argue that counsel's award should reflect her full rate for the entirety of the case.

**6.    Amount involved/results obtained:** Plaintiffs achieved all the relief which they sought.

**7.    Experience, reputation and ability of attorneys:** Plaintiffs' counsel has specialized in this area since 1998; 95% of her caseload involves special education matters.

**8.    Awards in similar cases:** Plaintiffs submitted expert opinion evidence to support their position that much larger awards than that requested here are common in IDEA cases.

Defendant disputes the attorney fee request on several grounds, none of which are persuasive. The request for fees expended prior to Plaintiffs' request for a due process hearing is questioned, but the statutory scheme of the IDEA mandates considerable pre-hearing consultation by its requirement that the parents, in conjunction with the District, develop an education program and placement plans which involve complex legal procedures and educational issues.   Actions taken during this

**ORD ON MTNS**
**FOR SUMM JMT - 9**

developmental phase are highly determinative of the outcome of the hearing, and the Court finds that special education attorneys such as Plaintiffs' counsel are required to begin preparations in advance of the due process hearing request.   Furthermore, awarding such fees provides a strong incentive to resolve conflicts prior to initiating such a hearing and the defense presents no authority that awarding pre-hearing fees in impermissible.

The Court finds that, considering the length of the due process hearing and the complexity of the issues, the amount of time spent in preparation for that hearing was reasonable.  Defendant contests the necessity of attorney fees for the June 10 IEP meeting, but that hearing was the result of Plaintiffs' successful assertion that the due process hearing could not be dismissed until the District had created a private school placement IEP.  The Court finds, therefore, that it was the "result of an administrative proceeding or judicial action" and eligible for an IDEA award.

In the final analysis, Defendant has raised no genuine issues of disputed material fact, only arguments about why the facts do no warrant the outcome Plaintiffs have requested.  This matter is amenable to summary judgment and it is the finding of this Court that Plaintiffs are entitled to the attorney's fees requested as a matter of law.

**Conclusion**

Plaintiffs are the prevailing parties under the IDEA in their dispute with Defendant, as they have achieved a judicially-sanctioned alteration in the legal relationship between themselves and the school district.  On that basis, they are entitled to an award of reasonable fees and costs and the Court finds that the attorney fees they have requested are reasonable and orders reimbursement of said fees within 30 days of the entry of this order.

The clerk is directed to provide copies of this order to all counsel of record.

Dated:  May __9__, 2005

Marsha J. Pechman
U.S. District Judge

**ORD ON MTNS**
**FOR SUMM JMT - 10**